IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>    Plaintiff,<br><br>v.<br><br>SEAN JACKSON,<br>    Defendant. | )<br>)<br>)<br>)<br>)   Case Nos.  22-cr-30026<br>)                 22-cr-30061<br>)<br>)<br>) |

## OPINION

**COLLEEN R. LAWLESS, United States District Judge:**

The sentencing hearings as to Defendant Sean Jackson commenced on July 10, 2024, and sentence will be imposed on August 22, 2024. At the prior hearing, the Court heard argument on Defendant's objections to the Revised Presentence Investigation Report. While most of the objections relate to Case Number 22-cr-30026, there are two objections made in both cases. After considering the parties' commentaries and arguments, the Court now rules on Defendant's objections.

I.    **Enhanced Penalty Objections**

Defendant initially objected to the enhanced penalties under 21 U.S.C. § 851 due to prior convictions for home invasion, 720 ILCS 5/12-11(a)(2) (2007), and cannabis trafficking, in violation of 720 ILCS 550/5.1. Defendant now withdraws his objection and acknowledges the cannabis trafficking conviction qualifies as a serious drug felony under 21 U.S.C. § 802(57) based on the Supreme Court's recent decision in *Brown v. United States*, 144 S. Ct. 1195 (2024). Therefore, Defendant's mandatory minimum term of

imprisonment is increased from 10 years' imprisonment to 15 years' imprisonment, and his mandatory term of supervised release is increased from 5 years to 10 years.

Defendant maintains that his 2007 conviction for home invasion is not a "serious violent felony" as necessary for a sentencing enhancement under 21 U.S.C. § 841(b)(1), nor is it a "crime of violence" as necessary for a career offender designation under § 4B1.1. The term "serious violent felony" means, as relevant here, "any other offense punishable by a maximum term of imprisonment of 10 years or more that has an element the use, attempted use, or threatened use of physical force against the person of another." 18 U.S.C. § 3559(c)(2)(F). Based on this definition, the Government contends Defendant's conviction for home invasion qualifies as a serious violent felony while Defendant argues that, as defined under Illinois law, his conviction did not require the use, attempted use, or threatened use of physical force.

The parties agree that courts employ a categorical approach to determine whether a state offense fits within the elements clause. *See United States v. Taylor*, 142 S. Ct. 2015, 2020 (2022). "Under the categorical approach, the only relevant question is whether the federal felony at issue always requires the government to prove—beyond a reasonable doubt, as an element of its case—the use, attempted use, or threatened use of force." *United States v. States*, 72 F.4th 778, 783-84 (7th Cir. 2023) (internal quotation marks omitted). If the crime can be committed without the government proving one of those elements, there is a categorical mismatch and the crime is not a predicate offense for the enhancement. *United States v. Brown*, 74 F.4th 527, 530 (7th Cir. 2023); *see also United States v. Smith*, ___ F.4th ___, 2024 WL3506195, at *1 (7th Cir. July 23, 2024) ("To be sure that

Smith's prior offense qualifies as a predicate offense for the sentence enhancements, we must determine whether the enhancements' definitions of serious violent felony and crime of violence are broad enough to encompass the elements of Smith's statute of conviction.").

A statute is divisible if, instead of defining a single set of elements for a single crime, it defines multiple crimes by "listing elements in the alternative." *Elion v. United States*, 76 F.4th 620, 626 (7th Cir. 2023). If the statute is divisible, courts may employ the modified categorical approach which allows courts to examine a limited number of record documents to determine the crime and elements of the defendant's prior conviction. *Id.* Once the precise elements of conviction are identified, a court can then compare that crime with the applicable Guidelines offense. *Id.* "If the elements of that crime fall within the coverage of that offense, then there is no mismatch, even if the same statute lists other offenses with broader elements." *Id.* If the prior statute of conviction is broader than the Guidelines offense and indivisible, the prior conviction does not qualify as a predicate offense even if the Guidelines offense covers the facts of defendant's actual conduct. *Id.*

The parties agree that, because the statute in effect at the time of Defendant's conviction listed six alternative elements, the statute is generally divisible. When a statute is generally divisible, courts look only at the specific subsection to which the defendant pled guilty. *United States v. Ruth*, 966 F.3d 642, 649-50 (7th Cir. 2020). The charging instrument from Defendant's case shows that he pled guilty to Count II, which specifically alleged a violation of subsection (a)(2). That subsection is not itself divisible

because it does not include further alternative elements. *See Ruth*, 966 F.3d at 650. The Court now turns to whether that specific subsection has as an element "the use, attempted use, or threatened use of physical force against the person of another." 18 U.S.C. § 3559(c)(2)(F)(ii).

The Government notes that the Supreme Court has interpreted the term "physical force" under the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e)(2)(B), as "force capable of causing physical pain or injury to another person." *Johnson v. United States*, 559 U.S. 133, 138-40 (2010). Subsequently, the Supreme Court concluded that *Johnson* "does not require any particular degree of likelihood or probability that the force used will cause physical pain or injury, only potentiality." *Stokeling v. United States*, 586 U.S. 73, 84 (2019). "[F]orce is capable of causing physical injury within the meaning of *Johnson* when it is sufficient to overcome a victim's resistance." *Id.* (internal quotation marks omitted). *Id.* at 85. At common law, "[o]vercoming a victim's resistance was *per se* violence against the victim, even if it ultimately caused minimal pain or injury." *Id.* at 83-84.

The Seventh Circuit noted that "[t]his understanding . . . comported with *Curtis Johnson*'s requirement that the force be 'capable of causing physical pain or injury,' since any overcoming of resistance involves a 'physical contest' and 'it is the physical contest between the criminal and the victim that is itself 'capable of causing physical pain or injury.'" *Johnson v. United States*, 24 F.4th 1110, 1120 (7th Cir. 2022) (quoting *Skokeling*, 586 U.S. at 84, and *Johnson*, 559 U.S. at 140) (internal citations omitted). The court concluded that "after *Curtis Johnson*, any offense involving force 'capable of causing physical pain or injury' is sufficient to qualify as a violent felony under the ACCA. And after *Skokeling*, an

offense per se satisfies *Curtis Johnson*'s definition of force if it involves the offender's overcoming the victim's resistance." *Id.* at 1120.

As noted, the parties dispute whether home invasion qualifies as a crime of violence under § 3559(c)(2)(F)(ii). The only element relevant to the consideration involves whether Defendant "intentionally causes any injury, except [by discharge of a firearm], to any person or persons within the dwelling place." 720 ILCS 5/12-11(a)(2).

The Government notes that Illinois law requires the use of an appropriate pattern jury instruction when one exists. *People v. Sims*, 192 Ill.2d 348, 412 (2000). According to Illinois Pattern Criminal Jury Instruction 11.54, the definition of injury is found under Instruction 11.53B, which states that "[t]he term 'injury' in the definition of home invasion may include physical injury. It also includes psychological or emotional trauma if that trauma was the result of some physical contact." Thus, there must be physical contact causing one of those types of injuries to sustain a conviction for home invasion.

Defendant alleges the injury element does not fit within the elements clause because it allows the State to prove "any injury" and not just injuries caused by an offender's use of force. Psychological injury alone can satisfy this element. *People v. Hudson*, 228 Ill.2d 181, 195 (2008). Defendant notes that an offender need not use force or even touch a victim to cause psychological injury. "[A]*ny* physical, emotional, psychological, or traumatic injury intentionally caused by the defendant to a person inside the dwelling is sufficient to satisfy this required element, with or without physical contact." *People v. Dorsey*, 66 N.E.3d 914, 920 (4th Dist. 2016). Based on *Hudson* and *Dorsey*, Defendant contends that mere proof of emotional trauma is enough to sustain a

conviction, regardless of whether Defendant used force, attempted force, or threatened force to cause that trauma. Therefore, Defendant alleges the injury element for home invasion is a categorical mismatch because it encompasses offense conduct that is broader than the federal elements clause.

The Government argues that each case that Defendant relies on for the proposition that "any injury" include "purely emotional, mental, or psychological injury or trauma" also demonstrates physical contact against the victim or another in the home. In *Dorsey*, the defendant shoved one of the victim's daughters upon entering the home and had fought with police in the same room the victim and her daughters were in. *Dorsey*, 66 N.E.3d at 922. In *Hudson*, the defendant grabbed the victim's wrists and face and pushed her against the basement door before then grabbing her hair and pulling her toward the back door. *Hudson*, 228 Ill.2d at 183-84.

The Government states that, in each of the examples cited by Defendant, some degree of force was used to cause the injury. Additionally, other Illinois courts, while not citing *Dorsey*, have noted that "[t]he term injury and the definition of home invasion may include physical injury. It also includes psychological or emotional trauma, if that trauma was a result of some physical contact." *People v. Okoro*, 208 N.E.3d 1084, 1094 (1st Dist. 2022); *see also People v. Brocksom*, 2021 IL App (2d) 191-1098-U ¶ 28 ("The term 'injury' in the definition of home invasion may include physical injury. It also includes psychological or emotional trauma if that trauma was a result of some physical contact."). The Government states that, when applying this framework, force sufficient to cause an

injury—including emotional trauma—to a victim in the context of Illinois' home invasion statute should also meet the elements clause outlined in 18 U.S.C. § 3559(c)(2)(F)(ii).

The Court adheres to its earlier ruling in *United States v. Bull*, No. 20-cr-30046 (C.D. Ill. Dec. 12, 2023), when it concluded that an Illinois home invasion is not a serious violent felony. While the Government correctly notes that *Dorsey* and *Hudson* involved physical contact in addition to emotional, mental, or psychological trauma, the Illinois Supreme Court stated that psychological injury alone can satisfy the injury element. *See Hudson*, 228 Ill.2d at 195 ("Thus, we hold that proof of *psychological* injury or trauma satisfies the injury elements of section 12-11(a)(2) of the Criminal Code of 1961."). The Illinois Appellate Court also held that "any injury" "means just that—*any* physical, emotional, psychological, or traumatic injury. . .with or without physical contact." *See Dorsey*, 66 N.E.3d at 920. Accordingly, the Court SUSTAINS Defendant's Objection and concludes Defendant's prior home invasion conviction does not qualify as a serious violent felony to increase the mandatory minimum sentence or a crime of violence supporting the career offender enhancement.

## II.    Threat Enhancement

Defendant objects to the 2-level enhancement in paragraph 36 under § 2D1.1(b)(2), which states, "If the defendant used violence, made a credible threat to use violence, or directed the use of violence, increase 2 levels." While Defendant was being booked at the DEA Office in Springfield following his arrest, DEA Agent Luke Edson reported Defendant stated the following:

> JACKSON spontaneously stated he should have killed "Dante." JACKSON said he seriously should have killed Dante. JACKSON said he decided to wait to kill Dante until he knew it was him. JACKSON said otherwise he would have to live with his decision if he was wrong.

(Doc. 67 at 13). Defendant cites Black's Law Dictionary, which defines "threat" as "an avowed present determination or intent to injure presently or in the future." Defendant claims that the context of the statements reveals they were not true threats. The statements were made out of frustration and anger following his arrest. It also strains credulity to suggest that Defendant was informing law enforcement of a plan to kill the cooperating witness. Defendant further asserts the Government has produced no evidence that Defendant took any actions in furtherance of his statements.

The Government claims that the statements were in fact a present determination to take action in the future, once he was able to confirm that "Dante" was the confidential source (CS). Defendant even noted that he should have already done so. Moreover, the statements were made before any detention order was entered and thus at a time when Defendant's release was possible. The Government contends the 2-point enhancement for credible threats of violence should apply.

There does not appear to be any case law addressing whether the enhancement for credible threats applies in this context. The commentary to § 2D1.1(b)(2) is also silent on the issue. While Defendant's statements might reasonably be perceived by the CS as a threat, they do not constitute credible threats based on the circumstances surrounding the statements. Defendant made the statements directly to law enforcement after he was arrested and booked into custody. The statements appear to either be expressions of

regret that he did not kill the CS earlier or, more plausibly, statements expressing frustration and anger following his arrest. The statements are not reasonably taken as expressions of an intent to take action in the future. Therefore, the Court SUSTAINS Defendant's Objection and concludes that the 2-point enhancement for making a credible threat to use violence does not apply.

### III. Premises Enhancement

Defendant objects to the 2-level enhancement in paragraph 37 under § 2D1.1(a)(12), which applies "[i]f the defendant maintained a premises for the purpose of manufacturing or distributing a controlled substance." The commentary provides:

> Among the factors the court should consider in determining whether the defendant "maintained" the premises are (A) whether the defendant held a possessory interest in (*e.g.*, owned or rented) the premises and (B) the extent to which the defendant controlled access to, or activities at, the premises.
>
> Manufacturing or distributing a controlled substance need not be the sole purpose for which the premises was maintained, but must be one of the defendant's primary or principal uses for the premises, rather than one of the defendant's incidental or collateral uses for the premises. In making this determination, the court should consider how frequently the premises was used by the defendant for manufacturing or distributing a controlled substance and how frequently the premises was used by the defendant for lawful purposes.

§ 2D1.1 cmt. n. 17. "[A]n individual 'maintains' a drug house if he owns or rents premises, or exercises control over them, and for a sustained period of time, uses those premises to manufacture, store, or sell drugs, or directs others to those premises to obtain drugs." *United States v. Acosta*, 534 F.3d 574, 591 (7th Cir. 2008).

Defendant claims that the record does not demonstrate that he used 2120 East Monroe Street for a sustained period of time to manufacture, store, or sell drugs. Three

controlled buys from the home occurred on July 27, 2021, August 5, 2021, and August 11, 2021. Defendant contends that a 16-day period is not a "sustained period of time." Discovery materials indicate that agents unsuccessfully attempted other controlled buys, which Defendant claims indicates he did not continue to sell drugs from the residence.

Defendant states that, when agents executed a search warrant at 2120 East Monroe Street in May 2022, they found no drugs, no money, no drug ledgers, no scales, or any other indicia of drug sales from the location. The agents found "white wrappings, black paper and a dryer sheet" in the kitchen trash can, and "a bundle of brown and black paper with white wrappings" in the garage. Subsequently, the wrappings from the kitchen tested positive for methamphetamine and cocaine, while the wrappings from the garage field tested positive for cocaine.

Defendant contends there is no evidence as to how long the "wrappings" had been in the home. Moreover, given that Defendant was using methamphetamine until the time of his arrest, there is no evidence the wrappings were from drugs being sold as opposed to drugs being used. Thus, Defendant claims the record does not establish that he used the address "for a sustained period of time" to "manufacture, store, or sell drugs, or direct others to those premises to obtain drugs" to support the enhancement.

The Government notes that the Court need not find that Defendant stored multiple kilograms of drugs over an extended period of time for the enhancement to apply. On July 27, 2021, Defendant sold 123.5 grams of cocaine to the CS from 2120 East Monroe. On August 5, 2021, Defendant sold 448 grams of methamphetamine to the CS. Instead of conducting the transaction in the confidential source's vehicle, Defendant had the CS

come inside the residence to conduct the transaction. On August 11, 2021, Defendant told the CS to come to the residence to conduct the drug transaction, at which time Defendant sold him 449.9 grams of methamphetamine.

The Government further notes that Defendant owned and maintained control over 2120 East Monroe Street during the transactions at issue through the time he was arrested. In May of 2022, DEA agents conducted a search of the residence and discovered the items in the kitchen trash can which contained methamphetamine residue and items in the garage which confirmed the presence of cocaine. The items which included white wrappings, black paper, and a dryer sheet and a bundle of brown and black paper with white wrappings are commonly used to transport illegal substances.

In further support of its position, the Government has submitted several exhibits which include an image and videos from Defendant's Snapchat account. The first is an image showing a large stack of U.S. currency. The second is a video showing Defendant wearing expensive jewelry. The third is a video showing Defendant with a large amount of U.S. currency, while the fourth shows Defendant counting a large amount of U.S. currency. The Government notes each of these is dated months after Defendant's last sale of controlled substances to the CS.

Defendant has acknowledged never having held a position of employment. Thus, the Government claims that his livelihood has been selling drugs. The Government contends that the images and videos along with the indicia of drug distribution and packaging material found inside 2120 East Monroe Street in May 2022 establish that

Defendant made his living selling drugs well after the sales to the CS in July and August of 2021.

In *United States v. Craft*, 99 F.4th 407 (7th Cir. 2024), the Seventh Circuit noted that courts should not employ a "simple balancing test" comparing the frequency of lawful activities with those that are unlawful. *Id.* at 411. Instead, courts are to consider "both the frequency and significance of the illicit activities, including factors such as quantities dealt, customer interactions, keeping tools of the trade and business records, and accepting payment." *Id.* (internal quotation marks and citations omitted). In *Craft*, the Seventh Circuit found the evidence insufficient to support the enhancement when the only evidence presented was that defendant had transferred methamphetamine to his roommate at the home on "several" occasions for later distribution. *Id.* There was no evidence that Defendant sold methamphetamine to anyone else at the home. *Id.* Moreover, law enforcement did not find any other evidence of drug activity that might suggest that defendant primarily used the premises for drug distribution. *Id.* The court also found significant the fact that on most occasions, defendant transferred drugs to his roommate at a local gas station and not at the home. *Id.* at 411-12. This suggested that the distribution of drugs was not a "primary or principal" use of the premises and was merely incidental to their residence at the home. *Id.* at 412. While the fact that a defendant may make his livelihood selling drugs can be a relevant consideration, that is "not sufficient, by itself, to support the application of the premises enhancement. After all, the fact that a defendant earns his entire livelihood selling drugs does not necessarily mean he manufactures or sells those drugs at his home. Any other conclusion would be

divorced from the text of the enhancement, which provides for a two-level enhancement only if the premises is maintained for the purpose of *'manufacturing or distributing'* a controlled substance." *Id.* at 412-13.

Unlike the defendant in *Craft*, Mr. Jackson had a separate primary residence in Springfield where he resided. Defendant owned and maintained sole control over the Monroe Street residence during the period in question. Defendant does not suggest any other use of the residence. At Defendant's direction, all three drug transactions took place at 2120 East Monroe Street. Nine or ten months later, pursuant to a search warrant, DEA agents located several materials that tested positive for the presence of drugs and which are commonly used for trafficking illegal substances. The execution of the search warrant at Defendant's primary residence did not produce any illegal substances or related materials. Additionally, the images and videos showing Defendant with a large amount of U.S. currency or wearing expensive jewelry are dated well after the drug transactions in August of 2022. The Court concludes that all of these factors along with Defendant's lack of any employment history indicate that 2120 East Monroe was maintained "for the purpose of manufacturing or distributing a controlled substance." Thus, the 2-level enhancement under § 2D1.1(a)(12) is appropriate, and Defendant's Objection is OVERRULED.

IV. **Remaining Objections**

Defendant objects to certain guideline calculations based on the other objections he has advanced. The Court will address the calculations when the sentencing hearing resumes.

Defendant also objects to paragraph 49 and claims he did not strike Marcus Holmes in the head with an object when he committed the offense of home invasion in 2007. He does not admit he hit anyone on the head or used, threatened, or attempted to use physical force. Defendant makes the same objection to paragraph 37 in Case Number 22-cr-30061. Pursuant to Rule 32(i)(3)(B), the Court finds that a ruling on these objections are unnecessary because the matter will not affect sentencing.

Defendant objects to paragraph 88 which states he is a member of the Gangster Disciples. He acknowledges being a member of the gang SQAD (Shoot Quick Avoid Death) but denies being a current or former member of the Gangster Disciples. Defendant makes the same objection to paragraph 75 in Case Number 22-cr-30061. Pursuant to Rule 32(i)(3)(B), the Court finds that a ruling on these objections are unnecessary because the matter will not affect sentencing.

The Clerk is Directed to send a copy of this Order to the United States Probation Office.

ENTER: August 21, 2024

COLLEEN R. LAWLESS
UNITED STATES DISTRICT JUDGE